The next matter, number 171635, Robert Kando v. RI Board of Elections et al. May it please the Court, I'd like to reserve one minute for rebuttal. You may. Thank you. Plaintiff's complaint alleges a denial of federal due process arising out of the termination of his employment as Executive Director of the RI Board of Elections. Based on two simple theories. Denial of objective property interests without due process of law. Denial of name-clearing hearing. And the facts supporting that are simple. Route 20, the complaint in particular. At a board meeting on January 11, 2016, the board voted to withdraw, to declare a previous termination of Donald Roy. And that plaintiff was to enroll in the next three semesters of management courses at an educational facility of his choice. And there would be a review at the end of the third semester of plaintiff's working relationship with the board and that of his role as Executive Director for the board. How about 22? In any event, plaintiff and defendants thus agreed that plaintiff would be re-evaluated after three semesters. That so long as he enrolled in, studied, and took management courses, any prior controversy or issue would not impact his continued employment, at least until said re-evaluation. Pretty clearly planned. I think the theory is pretty clear. At this stage of the pleadings, it must be accepted as true. Let me ask you to pause on that. Doesn't the complaint make clear that the basis for alleging that there's a contract is a motion passed by the board? Correct. And that's the way an entity of this type would act, is through that. In fact, that's one of the reasons why you would say we should ignore the January 19 letter, because it wasn't a motion by the board. How can you say that we should read any more into that than what is in that? In other words, I'm not quite sure how you say the board passed a motion on terms A, B, and C. And now I have in my complaint, though, paragraph 28, an allegation that we agreed to A, B, C, D, E, F, and G. I think we would deem you restricted to what the board passed. I'd like to address that two ways, if I may. One, if you look in their answer, and if you look in all their papers, they don't disagree that there was an agreement, that there was an understanding that he would have this right pursuant to this resolution. In their answer, paragraph 20, to paraphrase, the board did not act on the previous decision of the board to terminate Kando, effective January 12, 2016, subject to Kando agreeing to enroll and commence college-level management courses in January 2016. So they come up with a different understanding of the agreement, but they don't disagree there's an agreement. In any event, the paragraph you just read doesn't say that at all. It says that they did not act. They're not saying there's an agreement. They're reciting the fact. We all know the board didn't act. And they went further to say, subject to Kando agreeing to doing this. Right. Yeah. So they agree that there's an agreement. But they don't say, subject to him doing it, we are going to ensure his employment is in place until he completes these courses or anything like that. I mean, you'd like us to read it that way. Well, I can't find that in the text of the minutes. Well, first of all, this is at the pleading stage. And this is the conundrum that we have here. Because I'm being required to prove on the four corners of my complaint that there is a binding lawful legal agreement. And I don't have to do that. Now, wait a minute. You say the agreement is in the minutes. The minutes exist. We're not looking for extrinsic proof. If you had alleged there was a course of conduct over a year and a half, and the result of that course of conduct was an agreement, right, you haven't done that. You've alleged that in a meeting, on a specific date, the board entered into an agreement with your client. The board, by law, acts through resolutions. There is a resolution or an action adopted by the board on that date. You recite it in your complaint. So we've got to look to that text to determine if that contains the elements of the contract that you want us to read into that text. I go further here. It doesn't matter how we characterize this as a contract, as an understanding, as a legitimate expectation of continued employment based on their action. They said that if you enroll in the next three courses at the educational facility of your choice, there will be a review at the end of the third semester about your relationship with the board and your role as executive director. So implicit in that is that, until then, you're just going to keep being our executive director. And at this stage of the plea, here's the thing that really riles me here. We must construe all facts and inferences therefrom in favor of the plaintiff. Well, we have to do that if they are relevant facts that could support the plaintiff as a matter of law. And my question is this. I have not gone beyond the briefs in my reading for this case, but the claim is made that there is clear Rhode Island law to the effect that a board like this cannot, by agreement, modify the classification of the particular job as one in which the incumbent serves as pleasure. In other words, as I understand what we have been told, Rhode Island law does not allow a Board of Regents versus Roth contract to be a contract cognizable at all. And if that is the case, it seems to me that regardless of what might be read into the words of the resolution, those words could not possibly affect the fact that as a matter of Rhode Island law, he served at pleasure and they could fire him whenever they wanted to. You know, I think that's an accurate characterization of the state's position. And the state's position is absolutely false. It's a lie. That is not what Rhode Island law says. Rhode Island law says very clearly, serve at the pleasure includes the pleasure to determine the terms and conditions of employment, including employment for a fixed term, including employment that has a right to continued employment in some aspects. And what are you citing for that proposition? Thank you, Ron. The DiCicco case is the most significant. But the DiCicco case had a special statute which authorized an employment contract for up to three years for a particular employee, the holder of a particular position in the unclassified service. There is no comparable statute in this case. I'm not sure that that's really what DiCicco was about. But that's the facts on which DiCicco is decided. The position is the Commissioner of Elementary and Secondary Education. The General Assembly passes a statute that says that the Board of Education, which has a somewhat different name at that time, has the authority with respect to that one position only to enter into a contract with an individual to be the Commissioner for a period of up to three years. And everything in the opinion flows from that statutory mosaic. You don't have that here. There is the only statutory references to the Board of Elections, provide that the key employees of the Board, including the Executive Director, who in Rhode Island is called the Secretary, are in the unclassified service. There is no authorization granted to the Board to enter into any contractual term within the unclassified service. May I respond to that, please? Yes. Because it's really important. That's not the DiCicco case. You're talking about Vented 2 Law. You're talking about the Commissioner of Education. And that statute was modified to say, if I may, that statute says that you serve at the pleasure, but you may not have an initial term greater than two years. That is not a grant of additional power. That's a limitation on the pleasure. It's a limitation that you cannot extend beyond that. The DiCicco case was an unclassified sheriff who was appointed for a fixed term. And the court said, if you're appointed for a fixed term, then you have a legitimate property interest in your employment. It's exactly what they said. It's exactly what they said in Vented 2 Law. But deputy sheriffs also have a special statute authorizing terms of up to ten years, even though they're in the unclassified service. Correct. But again, it's worded the same exact way. It says, serve at the pleasure. However, the initial term shall not exceed so many years. And is there comparable language in the enabling statute for the Board of Elections? No, Your Honor, there's not. Okay. The last thing I'd say is that Gantara's case talks again about implied contracting unclassified services. You've answered the question. You may want to save your time for rebuttal. May it please the Court, Your Honors. Adam Scholes on behalf of the Rhode Island Board of Elections. Your Honors, I'd like to just start off where Your Honors just finished, which is the DiCicco case. I'd like to submit to this Court that the issue is not whether or not the complaints, the allegations were properly pled, it's as Your Honor, Justice Souter articulated, is whether or not, as a matter of Rhode Island law, the Board of Elections even had the authority to enter into a contract with Mr. Cando. The DiCicco case, as was just argued, deals with the Sheriff's Department. In that case, Rhode Island general law 4229-1 explicitly states that the High Sheriff, and I actually looked up the law from 1990, this case was first mentioned in the reply memorandum, so I didn't have an opportunity to respond to it, but I looked up the statute. In 1991, the governor of the state of Rhode Island had the authority to enter into a 10-year fixed term with the High Sheriff of the state of Rhode Island. And in the DiCicco case, the Rhode Island Supreme Court, the language supports the state's position here. The Rhode Island Supreme Court in DiCicco at page 1343 and 1344 states, quote, although DiCicco is an unclassified employee, he was appointed for a fixed term, period. Thus, he is entitled to a greater monopoly of rights that our more unclassified employees serve at will. Let me ask you to hone in on this a little more. The specific issue that seems to be before us is we have a motion passed, an authorized motion passed by the board that says there's going to be a review if certain things are done. And the argument is that although that doesn't say that you won't be fired without cause in the interim, one could read that into it as an implied term. Otherwise, why are they saying what they're saying? That's the argument. So the question of law is, does Rhode Island law for an unclassified employee of this type allow the creation of a binding contractual term either both expressly and implicitly? And it seems that in Lynch versus Gonzales, the Rhode Island Supreme Court may have left that issue open. Am I correct in that reading? And if it's open, is it still open? Respectfully, I would disagree with that. It's just left open. By reading the case, the issue wasn't before the court, that case. It's just kind of reading dicta. But I would just state that in Rhode Island, there's various types of classification. Here's unclassified. You have a statute that lists every type of employee who is unclassified, including myself. And then some agencies or appointing authorities have specific statutes, which may give that agency the explicit ability to enter into fixed terms. The two examples cited in this appeal are the high sheriff in the Checco case and also the Rhode Island Board of Education in the Ventolilio case. Both of those cases, the authority in the Board of Education had the right to enter into a three-year term. And in the DeChecco case, it was a 10-year term. Here, the statute was clear that Mr. Cando, as an elections employee, as a secretary of the Board of Elections, was an unclassified employee. The actual language says, shall be an unclassified employee, shall. It's much different than the DeChecco case, much different than the Board of Education case. We submit that this case is entirely on point with the Salisbury case, which was cited in our brief, in which case in Salisbury, it had to do with the Rhode Island State Police hired an employee, unclassified. The allegation was that, just similarly to here, that it was an implied contract, that the superintendent of the Rhode Island State Police promised this contract employee that he would not be fired until a certain project was completed. Unfortunately for the plaintiff in that case, he was terminated before the contract was completed, and he sued, making these similar or same allegations as Mr. Cando here, being that there was a contract and that he had a due process right. The court in Salisbury disagreed with Mr. Salisbury. The Supreme Court held that an unclassified state employee serving at the pleasure cannot have a legitimate entitlement to continued employment, and therefore does not possess a property interest. The court also addressed this implied contract theory and said that the court held that even if the promise was made, the promises would fail to establish an entitlement to continued employment sufficient to support Salisbury's claim of wrongful dismissal because the superintendent, which was Mr. Stone at the time, had no authority to make the binding promises. That's precisely the state's position in this case, that, number one, the board had no authority to enter into a contract for any fixed term with either Mr. Cando or any other employee at the Board of Elections. And, two, even if they had wanted to, they didn't have the authority to. And we cite cases to support this position, the Romano case, where another state employee relied to his great detriment. Information relayed by the retirement board turned out to be false, and, unfortunately for him, the courts held that it doesn't matter whether or not you rely on information provided by the government. If the information provided by the government, by the official, is inaccurate because that person wouldn't have the authority, whether implied or actual, to change state law. And the state law is clear when someone can retire. We also cite the Gibbons case for that same general premise, that a state employee, or in this case a state agency or board, does not have the authority that is not given by the General Assembly, which in this case cannot enter into any fixed-term contract with Mr. Cando. The district court seems to have relied in part on the terms set forth in, I think it was, the January 19 letter from the acting chair. How could we find, or the district court find, that that was sort of an authorized action of the entity here without a vote, without notice of a hearing? Can the chair and the Rhode Island law just fire off stuff that modifies anything that the full body has done? The issue of whether or not that letter was set with authority is disputed, which I would submit, we could take that letter out of the picture. Just rely on a January 11 resolution and what happened at that date. And there was no promise that Mr. Cando would remain employed for three semesters, which was three semesters, which could be a year and a half. But let me understand you, Mr. Scholz. Your first position is that it doesn't matter what was said on January 11. An unclassified employee has no property interest in his employment. By statute, he serves at the pleasure of the board. Your backup position is, if we look at the January 11 minutes, those minutes aren't sufficient to constitute any sort of implied contract, even assuming the board had power to enter into an implied contract. Exactly right, yes. But Judge Kayada's question is, even on your backup position, you will concede, will you not, that the January 19 letter shouldn't be part of the decisional calculus. That can't be deemed part of what the board did or did not authorize in the January 11 minutes. I could see that to a certain point. The only pushback, if I may, would be that that letter at least proves that there is no meeting of the minds. The fact that, if we're at the contract issue, whether or not the contract existed, whether or not the board believed Mr. Cando should sign up for it. It doesn't prove there's a meeting of the minds. It shows what the board chair's interpretation was of the January 11 meeting. That doesn't show that Mr. Cando agreed that he had to sign up by the end of January? Exactly, Your Honor, it shows that there's no meeting of the minds. Yes. Well, there's no meeting between the board chair and Cando, but there could have been a full meeting between Cando and the board. Perhaps, which is why I would just rely on what happened at the minutes, which our position is that what happened at the January 11 meeting was not an offer, and what it was was an order by the board. The board was the employer of Mr. Cando, ordered that he, instead of terminating him, which was the intention that night, ordered that he would enroll in the next three semesters of management courses. Now, the next three semesters, in the board's mind, was in January, not in March or February, whenever he signed up. It was that month. That was not an offer. That was an order by the board. Unless there are any further questions, I would rest on my brief and ask the support to affirm the decision. Thank you. Thank you. I'll just reaffirm, after looking at the case law again, that the authority to the issue about the fixed-term appointments, again, I'm looking at the statute. It says serves at the pleasure provided that the initial engagement can't exceed three years.  It's a limitation. There's also a general limitation in the statute, saying you can't have a contract for more than three years. In this case, the district court had no problem finding that there was the ability of the board to provide a protection on the right to continued employment. It just said, decided to weigh the facts and reach a mixed question of fact and law and say there wasn't a meeting of the minds, which, of course, is a factual determination after discovery and trial. So, again, I think the case law, the Gantara's case, the DiCicco case, the Pezzatullo case, if you look at the reasoning, they all say, hey, you're unclassified. But in this particular case, you could have more benefits if appointed for a fixed term, in which case they were. So I think that that's the analysis, and that's what I want. Thank you. Thank you. Thank you.